Syllabus.

55  367
54a  95
55  367
69a  560
55   367
113a  ⁴315

# Chicago, Burlington & Quincy Railroad Co.

## *v.*

## Ferdinand Stumps, by his next friend.

1. Evidence—*positive and negative testimony—of their respective weight.* In an action against a railroad company to recover for injuries alleged to have resulted from negligence on the part of the servants of the company in respect to ringing the bell on the engine, positive evidence as to that fact is entitled to more weight than negative evidence in relation to it.

2. Negligence *in railroads—what constitutes.* A train consisting of thirteen empty freight cars was being pushed by an engine along the track on one of the streets in the city of Chicago, at the rate of about four miles an hour; there was a man stationed on the head car for the purpose of watching ahead, and another on the rear car to repeat signals from the former to the engineer, and while the men were attending to their duty in those respects, the train being in motion, a boy about seven years of age undertook to climb up on one of the cars, and, losing his hold, fell under the cars and was seriously hurt. In an action against the company, it was *held,* there was no negligence on their part in the management of the train · it was not incumbent on the company, under such circumstances, to place a guard on every car, to keep persons off.

3. While a railroad company is held to a very high degree of care and diligence in operating its road through the public streets of a city, yet the care and caution in this respect are required to be exercised in reference to the proper uses of the streets as a thoroughfare for travel, rather than to safety of persons in wrongfully getting on their cars when running.

4. The duty imposed upon the company does not require them to use every absolutely necessary precaution to avoid injury to individuals, or to have employed any particular means which it may appear, after an accident has occurred, would have avoided it; but they are only required to use every reasonable precaution, such as would have been adopted by a very prudent person, prior to the accident.

5. New trial—*verdict against the evidence—credibility of witnesses.* While it is the peculiar province of a jury to judge of the credibility of witnesses, still, they have not an arbitrary discretion in this respect; they can not, wilfully, nor from mere caprice, disregard the testimony of an unimpeached witness. They must exercise their judgment, in regard to the credit which should be given a witness, not their will, merely. In this respect, the action of a jury is subject to revision in the appellate court.

Appeal from the Superior Court of Chicago; the Hon. Joseph E. Gary, Judge, presiding.

The opinion states the case.

Messrs. Walker, Dexter & Smith, for the appellants.

Messrs. Rosenthal & Pence, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action on the case, brought by the appellee, a boy of about the age of seven years, for the recovery of damages for personal injuries sustained by him upon the track of the appellants, upon Brown street, in the city of Chicago, on the seventeenth of April, 1869.

It appears from the testimony that the train of the appellants started from Centre avenue, with some thirteen cars, to take them to the docks of the company, on Twenty-second street, to load with lumber, with the cars ahead of the engine, that is, the engine was pushing the train, and after they turned the curve at Brown street, and when near and a few feet north of its intersection with Walsh street, the appellee was run over, and both of his legs were crushed below the knee. At the time the accident occurred, the appellee, together with Henry Mous, a lad of about twelve years of age, and Herman Mous, nine years of age, were going to the planing mill, on twenty-second street, for shavings, and had with them bags, and when upon Brown street, and just north of its intersection with Walsh street, the appellee was, in some manner, thrown under the train, and received the injuries complained of.

There is some conflict in the testimony, as to whether the appellee, at the time, was attempting to climb upon the ladder of a detached car standing upon the track ahead of the approaching train, or whether he was attempting to climb upon the ladder of one of the cars of the train in motion.

The only testimony of the appellee on this point, is that of Henry Mous, one of the boys who was with the appellee at the time of the accident, who says:

There was a single car on the track, and Ferdinand put his bag on the steps of the car. The steps were iron, and go up the corner of the car. The train knocked against the car, and he let go. A fireman hit him on the leg with a piece of coal, and he rolled under the car; is certain there was a car standing there on the track, by itself; that he put his bag on the car and stood on the steps, but did not get on to the ladder of the car; that he saw the cars coming three blocks north, just after the appellee put his bag on the steps of the car; that when the train struck the car the appellee walked along and tried to take off the bag, but the engineer threw a stone and hit him, and he let go the bag, and there were some stones there, and he rolled under the wheels; that he was run over after the car was struck by the first car in the train; that the appellee was on the north end of the car that stood still; that the car upon which appellee was climbing, was not attached to the balance of the train, and was empty; that at the time the train struck the car he was about ten steps from the appellee, upon the street.

In opposition to this, we have, on the part of the appellants, the testimony of the following four witnesses:

John H. Quirk says: "I am a switchman; remember the accident; the train was going south, with the engine upon the north end of it, pushing it. I stood on the head car, on the south car of the train, watching to see that all was right, ahead of the train. There were no cars on the track after we turned the curve and entered Brown street, down to the switch below. I looked ahead as we turned the curve, to see what was on the track, because I wanted to go upon the switch; struck no car on Brown street, up to where we stopped. There was no car ahead of the one I was on; saw no boy there; there was none on the track ahead of this train; there may have been some alongside of the track. From the curve up to where we stopped, I

24—55TH ILL.

370          C. B. & Q. R. R. Co. *v.* Stumps.          [Sept. T.,

Opinion of the Court.

was watching ahead. There was no detached car ahead upon the track; it was the main track, and no place to leave cars; there are never any left there. I know there was no car ahead of this train on Brown street, and we struck no car from the time we left Centre avenue till we got down to the dock. The cars of the train were all coupled together, and to the engine and tender, and I stood on the south car, which was the head car of the train."

Jacob K. Groff, the fireman, says: He remembers the accident; that as they went around the curve at Brown street the engineer shut off, and reversed his engine, and he went out and put tallow upon the valves, and came back and stepped to the side of the engine, and looked out and saw a little boy hanging upon the ladder of the car, and saw him break his hold and fall under the car; that he immediately told the engineer, who reversed his engine and checked the train as soon as possible; that the boy was on the third car from the engine, on the ladder, on the west side of the car, and on the north end of it; that he broke his hold and fell under the car; that there were thirteen cars in the train; that he went out to put tallow on the valves, went out on his side of the engine, crossed over on the running board, and came around to put tallow on the engineer's side; that when he got back he put his tallow pot away and stepped upon the west side of the engine and looked ahead, and saw this boy hanging upon the third car from the engine, upon the ladder. After he broke his hold and fell down off the ladder of the car, there were two wheels passed over him. Witness looked out just in time to see the boy hanging on the lower round of the third car. He had his feet in the steps under the bottom of the car, because he was not tall enough to reach the second one. They did not strike any car or other object after they started from Centre avenue, until they stopped; if they had they would have felt it on the engine.

Charles Williams, the bell boy, says: "I did not see the boy on the train before it stopped, for I was on the opposite

side of the engine; did not notice the train strike any object after we left the curve; I could have told if it had struck the car or other object; it would have stopped her a little—jerked her. It did not strike any object after it left the curve."

Charles Lake, the engineer, says : "We started from Centre avenue, where we got twelve or thirteen cars, and as we went around the curve I shut off, and the fireman went out and oiled the valves; I was going slow; two or three boys tried to get on the train and ride. There was a switchman on the head of the train and on the back next to the engine, to give me signals. The switch was wrong and we had to stop and turn it, to go into Twenty-second street. I was watching the switchman, and did not see the boy slip off; first saw him hanging hold of the car a little this side of Luke street, between Luke and Walsh streets; saw him on the car, and saw another run and jump on the car at the same time; did not see him fall; he had hold of the third or fourth car from the engine. The boy was between Luke and Walsh streets when we stopped, right back of the tender. I should have known if the train had run against anything, but it did not; there would have been a severe shock. If it had run against the car with sufficient force to send it ten or fifteen feet, it would have fetched the engine up so that a man would have felt it. I saw the track ahead when I came around the curve; I looked ahead and could see nothing on the track to the dock, the end of the track. Running an engine at the rate of three miles an hour, with a train of thirteen cars, and striking a car standing upon the track, would produce an effect; it would not be a great effect, but one that you could feel on the engine. I was looking out on the west side of the engine; my head was out of the side window; saw the boy playing and jumping on the cars; had seen boys jump on the train every day; tried to keep them off, but could not; they started to jump on this side of Luke street, one block from Walsh street, and continued to jump on till the fireman told me something had happened; had my head

out of the window all the time till after the accident happened, and there was nothing on the track ahead; was running three or four miles an hour at the time the accident occurred, very slow, because the switch was wrong, and we wanted the switchman to go ahead and turn it so we could go into the Twenty-second street lumber yard."

The claim of the plaintiff is, that the servants of this company were guilty of gross negligence, in that they did not see a car standing upon its track ahead of the train, and that they ran against it with force, without coming to an entire halt. But, according to the above testimony of the appellants' witnesses, there was no car standing upon the track ahead of the train, and it did not run against any car.

It is improbable that there was a car standing upon the track at that point, as there was but one track, and no side switches or turn outs any where near there, and there was no occasion for leaving a car in that situation at that point, and there are never any left there, according to the testimony.

Besides, Henry Mous locates the stationary car about twenty steps north of Walsh street, and then says that the train went up to Walsh street after it struck the car, and stopped right at Walsh street, the south end of it, and that the detached car, after it was struck by the train, went about five feet beyond Walsh street. This would carry the train forward, after it struck the car, about three car lengths, which was about the distance the train moved after the engineer reversed his engine, according to the testimony of the appellants' witnesses; and when the train stopped, all the witnesses agree that it left the appellee opposite the tender attached to the rear of the engine, where he lay at the time the train stopped.

Had the supposed car stood, and the boy been injured about twenty steps north of Walsh street, it would be necessary to move the train forward the distance of the length of thirteen cars, in order to have placed it in the situation it was, with reference to the appellee at the time the train stopped. This

would have carried the end of the train some four hundred feet south of Walsh street, and beyond the street next south of it. The whole testimony is irreconcilable with the statement, that the appellee was attempting to get upon a detached car standing ahead of the train at the time he received the injuries, but it is entirely consistent with the fact that at that time he was attempting to climb upon the third car ahead of the locomotive, in the moving train.

The plaintiff's testimony upon that point was of quite an unreliable character. The witness swears first, that the fireman threw a piece of coal and hit the plaintiff; then again, he says that the engineer threw a stone, which struck the plaintiff. He is not only contradicted in this respect by both the fireman and engineer, but the engineer says the train was about two blocks long; it was composed of twelve or thirteen cars, twenty-five or thirty feet long. The improbability of the performance of such a feat, of throwing an object that distance and hitting the plaintiff, detracts much from the credibility of the witness.

We can come to no other conclusion, from the whole testimony, than that the appellee, at the time of his injury, was attempting to climb upon the ladder of one of the cars of the train in motion, and not of a detached car standing upon the track ahead of the approaching train, and that the railway company are not chargeable with any negligence in running against such a car.

Nor can we perceive, from the testimony, that the servants of the railway company, in any other respect, or the company itself, were guilty of culpable negligence in the management of the train. As to the ringing of the bell, it is true, the witness, Henry Mous, testifies that it was not rung, but the witness, Williams, whose express and sole employment on the train was to ring the bell, testifies that he rang it continuously from the time of leaving Centre avenue to the occurrence of the accident. The engineer and fireman both testify positively to the same. Positive evidence as to that fact is entitled to

374 C. B. & Q. R. R. Co. *v.* Stumps. [Sept. T.,

Opinion of the Court.

more weight than negative evidence in relation to it.. *C. & R. I. R. R. Co.* v. *Sill,* 19 Ill. 500; *C. &. A. R. R. Co.* v. *Gretzner,* 46 Ill. 75.

The train was running very slowly, about four miles an hour, it would seem. There were three men on the look out,—Quirk on the head car, the man "Bob" on the rear car, and the engineer. Quirk stood on the head car of the train while passing down Brown street, for the purpose of watching ahead, to guard against accident; the man "Bob," stood on the rear car, next to the locomotive, to repeat any signal that might be made by Quirk to the engineer, and the men appear to have all been attending to their duty in this respect at the time the accident occurred.

If these facts do not show proper care and caution in the management of this train, it is hard to see what more could have been done, except placing a guard upon every car, to keep persons off. And the argument for the appellee seems to go the length of assuming that position—that it was the duty of the company to have employed such a guard; that it should have exercised every precaution within its power to have prevented this particular accident.

The appellants are not responsible for causing this accident, merely, but only for negligence, in causing it; and negligence is the omission of the means reasonably necessary, not absolutely necessary, to avoid injury to others.

It is true that, a railroad company is held to the exercise of a very high degree of care and diligence in operating its road through the public streets of a city, but the care and caution in this respect are required to be exercised in reference to the proper uses of the street as a thoroughfare of travel, rather than to the safety of persons in wrongfully getting on their cars when running.

When an accident has once occurred, because it is seen, after the event, that the use of a particular precaution would have effectually prevented it, that does not show that it was the duty of the appellants, beforehand, to have adopted that precaution.

The duty was to have used every reasonable precaution, and not every absolutely necessary precaution, to avoid injury to individuals.

The question is, rather, what would have been the course of a very prudent person, prior to the accident; whether he would have thought exposure to injury from such a cause, such a probable source of danger as to have required the adoption of any further precautions and safeguards than those used, to protect against it. *City of Chicago* v. *Starr*, 42 Ill. 174; *C. & A. R. R. Co.* v. *McLaughlin*, 47 Ill. 265.

The decision of this case, it is true, involves the question of the credibility of witnesses, and the jury are peculiarly the judges of that question; still they have not an arbitrary discretion in this respect.

This court has said that a jury cannot, wilfully, nor from mere caprice, disregard the testimony of an unimpeached witness; that while they may judge of the credibility of a witness, they must exercise their judgment while doing so, and not their will, merely. *Robertson* v. *Dodge*, 28 Ill. 161; *C. & A. R. R. Co.* v. *Gretzner, supra.*

The great preponderance of the testimony is in favor of the defendants, and we are of opinion the jury decided manifestly against the weight of evidence, in finding the defendants guilty of negligence, and the court should have set aside the verdict, on the motion of the defendants.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*