THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFFS IN ERROR, v. WILLIAM A. RIGHTER AND WIFE, DEFENDANTS IN ERROR.

1. It is a part of the rule of contributory negligence that the plaintiff's negligent act must proximately contribute to his injury; but if it so contribute, the comparative degrees of the plaintiff's and defendant's negligence will not be considered.

2. If the case presents a fairly debatable question whether the plaintiff's negligent conduct did so contribute, the solution of that question is for the jury; but if it clearly appears that such conduct did contribute, then the court should direct a nonsuit.

3. It is a primary rule of legal caution that a person about to cross a railroad is bound to use his eyes and ears, to watch for sign-boards and signals, to listen for bell and whistle, and to guard against the approach of trains by looking each way before crossing.

4. The failure of the company to provide or give a statutory signal will not relieve a person from making this observation, if he has an opportunity, by a view of the road, to avoid danger.

5. A servant driving a carriage along a street crossing a railroad, and

Pennsylvania R. R. Co. v. Righter.

having, while yet at a point distant over thirty feet from the railroad track, a view of the same for a mile to the south, drove across the track, and the rear of his wagon was struck by a train coming from the south, and the wagon was demolished and the persons within it injured. *Held*—

1. That the negligent act of the servant contributed to the injury.

:2. That the fact that a train was just starting from a station one-quarter of a mile north, and blowing a whistle, could not have distracted the servant's attention so as to relieve him from his duty to look south.

An action was brought by Mr. Righter and wife against the Pennsylvania Railroad Company, for damages occasioned by a collision between a train of the company and a carriage of the plaintiffs below, driven by his servant, and containing, as occupants, Mrs. Righter and two daughters.

At the trial a verdict was returned in favor of the plaintiffs. The present writ of error brings up the judgment thereon and the record of the proceedings upon the trial.

For the plaintiff in error, *John P. Jackson* and *E. T. Green* cited :

*Penna. Canal Co.* v. *Bentley,* 66 *Penna. St.* 30 ; *Penna. R. R. Co.* v. *Matthews,* 7 *Vroom* 531 ; *Allen* v. *B. & A. R. R. Co.,* 105 *Mass.* 77 ; *Penna. R. R. Co.* v. *Beale,* 73 *Penna. St.* 504 ; *Runyon* v. *Central R. R. Co.,* 1 *Dutcher* 556 ; *Taff* v. *War-man,* 5 *C. B.* (*N. S.*) 585 ; *Ellis* v. *R. W. Co.,* 2 *H. & N.* 424 ; *Cliff* v. *R. W. Co., L. R.,* 5 *Q. B.* 258 ; *Kennard* v. *Burton,* 25 *Me.* 49 ; *State* v. *R. R. Co.,* 52 *N. H.* 528 ; *Robinson* v. *Cone,* 22 *Vt.* 213 ; *Gahagan* v. *R. R. Co.,* 1 *Allen* 187 ; *Berge* v. *Gardiner,* 19 *Conn.* 507 ; *Welds* v. *R. R. Co.,* 24 *N. Y.* 430 ; *Moore* v. *R. R. Co.,* 4 *Zab.* 284 ; *R. R. Co.* v. *Haslan,* 4 *Vroom* 147 ; *D., L. & W. R. R. Co.* v. *Toffey,* 9 *Vroom* 525 ; *Harper* v. *R. R. Co.,* 3 *Vroom* 88 ; *Runyon* v. *R. R. Co.,* 1 *Dutcher* 556 ; *Blake* v. *R. R. Co.,* 3 *Stew.* 240 ; *R. R. Co.* v. *Van Horn,* 9 *Vroom* 133 ; *Penna. Canal Co.* v. *Bentley,* 66 *Penna. St.* 30 ; *R. R. Co.* v. *Kirkpatrick,* 35 *Md.* 32 ; *Flynn* v. *R. R. Co.,* 40 *Cal.* 44 ; *R. R. Co.* v. *Dixon,* 42 *Ga.* 327 ; *Klein* v. *R. R. Co.,* 17 *Gratt.* 400 ; *Watson* v. *Transp. Co.,* 52 *Mo.* 434 ; *R. R. Co.* v. *Godard,* 25 *Ind.* 185 ; *Fallon* v.

*Boston*, 3 *Allen* 39; *McCully* v. *Clarke*, 40 *Penna. St.* 399; *Stinson* v. *R. W. Co.*, 32 *N. Y.* 333; *Shaw* v. *B. & W. R. W. Co.*, 8 *Allen* 45; *Baxter* v. *R. W. Co.*, 41 *N. Y.* 9; *Lake Shore R. R. Co.* v. *Miller*, 25 *Mich.* 274; *Whart. on Neg.*, ch. 9, § 300; *Camp. on Neg.*, §§ 81–83.

For the defendant in error, *Thomas N. McCarter* cited:

*Bonnell* v. *D., L. & W. R. R. Co.*, 10 *Vroom* 189; *N. J. R. R. Co.* ads. *West*, 3 *Vroom* 95; *Weber* v. *N. Y. Cent. R. R. Co.*, 58 *N. Y.* 451; *Penna. R. R. Co.* v. *Matthews*, 7 *Vroom* 531; *Cliff* v. *Midland R. Co.*, 5 *L. R.*, *Q. B.* 258; *Bilbee* v. *R. R. Co.*, 18 *C. B.* (*N. S.*) 584; *Johnson* v. *Hudson River R. R. Co.*, 20 *N. Y.* 75; *Biesegel* v. *N. Y. Cent. R. R. Co.*, 40 *N. Y.* 12; *Harty* v. *Cent. R. R. Co.*, 42 *N. Y.* 472; *Richardson* v. *N. Y. Cent. R. R. Co.*, 45 *N. Y.* 846; *Eaton* v. *Erie Railway Co.*, 51 *N. Y.* 544; *Weber* v. *N. Y. Cent. R. R. Co.*, 57 *N. Y.* 458; *Cordell* v. *N. Y. Cent. R. R. Co.*, 70 *N. Y.* 123; *Bradley* v. *Boston and Me. R. R.*, 2 *Cush.* 543; *Longfield* v. *Old Colony R. R. Co.*, 10 *Cush.* 569; *I. & St. L. R. R. Co.* v. *Stables*, 62 *Ill.* 317; *I. C. R. R. Co.* v. *Burton*, 69 *Ill.* 178; *Webb* v. *Portland and Kennebec R. R. Co.*, 57 *Me.* 134; *Phila. and Reading R. R. Co.* v. *Kelley*, 19 *Alb. L. Jour.* 263; *Spencer* v. *I. C. R. R. Co.*, 29 *Ia.* 59; *Artz* v. *Chicago R. I. & P. R. R. Co.*, 34 *Ia.* 153; *Robinson* v. *W. P. R. R. Co.*, 45 *Cal.* 409; *Belfontaine Railway Co.* v. *Hurston*, 33 *Ind.* 335; *Louisville R. R. Co.* v. *Commonwealth*, 13 *Bush* (*Ky.*) 388.

The opinion of the court was delivered by

REED, J.   The first and leading contention of the counsel for the plaintiffs in error, is that the plaintiffs below should have been nonsuited at the trial.

This is claimed upon the ground that, from the case there made by the plaintiffs, it clearly appeared that the negligent act of the plaintiffs' servant contributed to the causation of the collision by which the plaintiffs' family was injured.

The legal rule that where a person receiving an injury has,

by his own negligent conduct, partly aided in occasioning the injury, he cannot recover from the other party whose act assisted, has been so often asserted in the courts of this state, that a restatement of the doctrine, on the ground upon which it rests, would be wasted labor. *Moore* v. *Central R. R. Co.*, 4 *Zab.* 824; *Runyon* v. *Central R. R. Co.*, 1 *Dutcher* 556; *Telfer* v. *Northern R. R. Co.*, 1 *Vroom* 188; *Harper* v. *Erie R. R. Co.*, 3 *Vroom* 88; *Mathews* v. *Pennsylvania R. R. Co.*, 7 *Vroom* 531; *Toffey* v. *Del., Lack. and West. R. R. Co.*, 9 *Vroom* 525; *Bonnell* v. *Del., Lack. and West. R. R. Co.*, 10 *Vroom* 300.

It is settled, as a part of this rule, that the negligent act of the plaintiff must contribute, proximately, to the injury, else the right of the plaintiff to recover will not be defeated by such act.

If, in spite of his negligent act, the injury would have occurred by means of the negligent conduct of the defendant, or if the injury is disconnected from his act by an independent cause, then there is no legal contribution to the injury. *Moore* v. *Central R. R. Co.*, *supra*; *Van Horn* v. *Central R. R. Co.*, 9 *Vroom* 133; *Sper. & Red. on Neg.*, § 33; *Whart. on Neg.*, § 331.

It is also settled that the comparative degrees of the negligence of the respective parties will not control the question of liability, but that if the plaintiff, in any degree, proximately contributed to the injury, he cannot recover. *Drake* v. *Mount*, 4 *Vroom* 441; *Haslan et al.* v. *M. & E. R. R. Co.*, *Id.* 147; *Sper. & Red. on Neg.*, § 37; *Whart. on Neg.*, § 334.

It is also settled that if the case presents a fairly debatable question whether the plaintiffs' negligent conduct so contributed, the solution of that question is for the jury; but if it clearly appears that such conduct did contribute to the production of the injury, then the court should control the case and direct a non-suit. *Moore* v. *Central R. R. Co.*, *supra*; *Runyon* v. *Central R. R. Co.*, 1 *Dutcher* 556; *Aycrigg* v. *New York and Erie R. R. Co.*, 1 *Vroom* 460; *Harper* v. *Erie R.*

*R. Co.*, 3 *Vroom* 88 ; *Mathews* v. *Penna. Central R. R. Co.*, 7 *Vroom* 531 ; *Toffey* v. *D., L. & W. R. R. Co.*, *supra ; Bonnell* v. *D., L. & W. R. R. Co.*, *supra ; Whart. on Neg.*, § 427.

Does the evidence taken at the trial, in this case, show a clear case of negligence on the part of the plaintiffs' servant contributing, proximately, to the cause of the injury in question ?

The question of the presence or absence of negligence must be largely dependent upon the circumstances surrounding each case.    The test is the absence of such caution as a person of ordinary prudence would exercise under the circumstances.

The degree of care which a person is called upon to exert rises and falls with the danger to himself and to others who are dependent upon his conduct.

A person dealing with noxious chemicals or dangerous machinery is chargeable with a high degree of vigilance, because the natural result of a less degree of care is disaster to life and property.

Upon the managers of a railroad, compelled to use fire and powerful engines and swift trains, which, by the least mismanagement, may occasion terrible injury to life and devastation to property, is thrown a liability to use a degree of care commensurate with the risk.    *Salmon* v. *D., L. & W. R. R. Co.*, 10 *Vroom* 299 ; *West* v. *N. J. R. R. & T. Co.*, 3 *Vroom* 91 ; *Klein* v. *Jewett*, 11 *C. E. Green* 474, 12 *Id.* 550 ; *Bradley* v. *Boston and M. R. R.*, 2 *Cush.* 539 ; *C., B. & Q. R. R. Co.* v. *Stumps*, 55 *Ill.* 367 ; *Whart. on Neg.*, § 798.    And inasmuch as the exigencies of modern life have compelled the legalizing of these means of commerce, the law has imposed upon the citizen the duty of exercising the highest practicable degree of care in avoiding the danger to himself and the possible injury to those carried likely to be caused by a collision with or an obstruction of these trains.    *Moore* v. *Central R. R. Co.*, *supra ; Runyon* v. *Central R. R. Co.*, *supra ; Telfer* v. *Northern R. R. Co.*, *supra.*

Perhaps no question has more frequently received the consideration of the courts than what conduct amounts to the

exercise of the proper degree of care in avoiding a railway collision; and when we reflect that in this country alone, during every hour of the day and night, hundreds of such trains are speeding through villages and across highways, it is only marvelous that the occasions for these judicial examinations are not still more frequent.

But the occasions have been sufficiently frequent to give the courts the opportunity to express considerable judicial sentiment upon the question, and that sentiment has been formulated into rules, which may be applied to the solution of almost every kindred question that may arise.

A primary rule of legal caution is that a person about to cross a railroad is bound to use his eyes and ears, to watch for sign-boards and signals, to listen for bell or whistle, and to guard against the approach of a train by looking each way before crossing. *Telfer* v. *Northern R. R. Co., supra; Haslan* v. *M. & E. R. R. Co.,* 4 *Vroom* 147; *Cliff* v. *Midland R. R. Co.,* 5 *Q. B.* 258; *Stubley* v. *London and N. W. R. R. Co., L. R.,* 1 *Exch.* 13; *Butterfield* v. *Western R. R. Co.,* 10 *Allen* 532; *Baxter* v. *Troy and Boston R. R. Co.,* 41 *N. Y.* 502. Nor will the fact that the company has failed to provide or give a statutory signal relieve the person from making this observation, if he has an opportunity, by a view of the road, to avoid danger. *Runyon* v. *Central R. R. Co., supra; McCall* v. *N. Y. Central R. R. Co.,* 54 *N. Y.* 642; *Ernst* v. *Hudson River R. R. Co.,* 39 *N. Y.* 61; *Phelps* v. *Illinois R. R. Co.,* 29 *Ill.* 447.

Upon turning to the testimony in the present case, the following facts appear: The wagon of Mr. Righter was, at the time of the collision, driven by Deany, a servant. He had driven along Jefferson avenue, which runs parallel with the railroad, and turned into Fairmount avenue, which crosses the railroad. It was in crossing the railroad on this avenue that the collision occurred. The place where Deany turned into Fairmount avenue is about two hundred yards from the railroad. Before he reached the railroad he crossed Walnut street, a street running parallel with the railroad, and crossing

Fairmount avenue two hundred and seven feet from the railroad.

There is a slight descent from Jefferson avenue to Walnut street, but from Walnut street to the railroad it is about level. Fairmount avenue is eighty feet in width, and crosses the railroad at right angles. The railroad, where it crosses Fairmount avenue, has three tracks. The westerly track is for trains going south, the middle track for trains going north, and the easterly track is a switch and side-track. The train which struck the wagon of the plaintiffs was going north, on the middle track; the wagon was crossing from east to west.

About a quarter of a mile north from this crossing is the North Elizabeth station; about a mile south is the Central Elizabeth station. The track between them is nearly straight.

In passing down Fairmount avenue from Walnut street, there was no difficulty in observing the approach of a train from the north. In the direction of the North Elizabeth station there were neither fences, houses nor trees to intercept the vision.

In the other direction, from which the colliding train came, there were no fences or houses, but there were some trees. There were two or three trees growing on that side of Fairmount avenue, and there were a few trees growing on a line on the easterly side of the railroad, and about forty-seven feet from the middle track, but not on the company's land. Many of these trees were small, and between some there was considerable space. How much these trees intercepted the view of the track is not very clear, nor do I think material.

The railroad caution-post at the crossing at Fairmount avenue was twenty-five feet from the easterly track, and thirty-three or thirty-eight feet from the middle track. Standing on a line with this caution-post, in the middle of Fairmount avenue, the track was visible for a mile to the South.

This all appears from the testimony of Mr. Lehlbach, a witness for the plaintiffs.

Into this avenue, then, Deany, on the 22d of July, 1878, turned his wagon, and drove down across Walnut street. He

says that he stopped at Walnut street and listened. He saw a train standing at the North Elizabeth station; looked to the south, and saw no train. He started on again, and when he came within one hundred and twenty feet of the road he stopped again and pulled up his horses. He saw the train at the depot, and stood and looked and listened, and hearing no bell or whistle, he started on again; and when he got upon the side track—the horses on the other track—saw the train come flying right into him. It struck the rear part of the wagon, and the persons therein were thrown out and injured.

Now, it clearly appears that whatever obstruction there was to prevent a view of the track to the south at any point on Fairmount avenue from Walnut street to the caution-post, yet when Deany came opposite that post, and while still more than thirty feet from the middle track, he had a clear field for observation. He says his horses were gentle. He says he was driving at a jog-trot.

I am unable to see any reason why, if he had used his eyes with any degree of care, he could not have seen the approaching train in time to arrest the progress of his carriage and avoid the collision. It was his duty to approach the track with caution, and to have his horses at such a gait and under such control as would allow him to arrest their movements at once. Deany himself does not say that he looked at that point. There is, however, the testimony of three witnesses, who say that they saw him look. But such testimony cannot aid the plaintiffs where it is clear that, if he looked with care, he must have seen the train. If a traveler, says Dr. Wharton, by looking along the road, could have seen an approaching train in time to escape, it would be presumed, in case of collision, that he did not look, or, looking, did not heed what he saw. *Whart. on Neg.*, § 382.

It is said, or was said below, that there were facts which operated to interfere with Deany's discovery of the approaching train.

There was a train standing at the North Elizabeth station, which was blowing off steam, which prevented, or might have

prevented, his hearing the bell of the colliding train. But it is obvious, from the principles already enumerated, that this did not excuse the use of his eyes. He was bound to watch as well as listen.

Nor can the fact that a train was moving from another direction have any weight. When a person is confused by the presence of two dangers, and in endeavoring to avoid one meets the other, it will then, when it appears that such second danger was caused, not by want of care, but by terror or confusion likely to result from the situation, relieve the injured person from the imputation of negligence. This train, however, was a quarter of a mile away. It was just moving off. It could not have distracted the attention of Deany so as to have prevented his looking in the opposite direction, nor does he say that it did. It is also claimed that his view of the colliding train was intercepted by four platform-cars which stood on the siding. These cars were so low as to conceal only a part of the cars, and so located as to intercept the view of only a part of the train. I think that the absence of motion of these platform-cars would only render the motion of the train more perceptible. That the motion of an engine and a train of passenger cars could be so concealed by these platform cars as to prevent the discovery of the approaching train by Deany does not seem to me possible.

I am compelled to the conclusion that the negligence of Deany was clear, and that it proximately contributed to the collision.

However unfortunate the result is to the plaintiffs, yet, by a well-settled rule of law, Deany's negligence is imputable to his employers, and they should therefore have been nonsuited below.

The judgment should be reversed.

*For affirmance*—DIXON, KNAPP, SCUDDER—3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, REED, VAN SYCKEL, DODD, GREEN, LATHROP—7.