## Illinois Steel Company v. John Zolnowski.

### Gen. No. 11,504.

1. OWNER OF PREMISES—*when liable for injury to one rightfully thereon.* Where a person is rightfully upon the premises of another and is injured thereon as the result of a negligent act, in order to recover it must appear that such act was committed by such owner, or his servant, and, if committed by his servant, that such act was within the scope of his employment and done while engaged in the business of the owner of such premises with a view to the furtherance of his business.

2. RES IPSA LOQUITUR—*when doctrine of, does not apply.* This doctrine does not apply to an injury which appears undoubtedly to have resulted from the voluntary and negligent act of some person.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Reversed. Opinion filed February 10, 1905. Rehearing denied March 14, 1905.

Statement by the Court. This is an appeal from a judgment recovered by appellee in the Superior Court against appellant in an action on the case for personal injuries alleged to have been sustained by him by reason of the negligence of appellant. Appellant had in its works at South Chicago a building in which were ten "open hearth" furnaces, in which at the time of the accident natural gas was used to heat the furnaces. Each furnace was about thirty-five feet long and faced west and they were numbered from one to ten from north to south. The distance between one furnace and that next to it was about six feet. About fourteen feet above the ground was what is called the "charging floor." This floor extended from the west wall of the building to, but not under, the furnaces. It was thirty feet from the west wall of the building to the west face of the furnaces. The gas came into the building in a large main which ran on or near the surface of the ground along the west wall of the building. The furnaces were practically alike in construction and op-

eration and it will only be necessary to describe particularly number eight furnace at which the accident occurred. Opposite this furnace a branch pipe led from the main, under the "charging floor" toward the furnace. This was divided into two pipes, one going to the north end, the other to the south end of the furnace. In each end of the furnace was a "feed hole." Each branch pipe was at the furnace carried up to the level of the "charging floor" and to each was attached an upright pipe with an elbow at its upper end. This pipe is movable. When it was desired to heat one end of the furnace the pipe and elbow which was attached to the branch pipe which went to that end of the furnace was so placed and adjusted that the elbow fitted into the "feed hole" in that end of the furnace and the gas was then turned on into that branch pipe. When it was no longer desired to heat that end of the furnace the gas was turned off from that branch pipe and the elbow taken out of the "feed hole." When an upright pipe was not in use it was usually placed so that it leaned against the end of the adjacent furnace. The flow of gas for each furnace was controlled by three valves: one controlled the flow of gas from the large main into the main branch pipe; another the flow of gas in the branch pipe that led from the main branch pipe to the north end of the furnace, and the third the flow of gas in the branch pipe that led to the south end of the furnace. If the first mentioned valve was shut, no gas could flow from the main into the main branch. If it was opened the gas flowed from the main into the main branch. If the second valve was then opened the gas flowed into the pipe leading to the north end of the furnace. If the third valve was opened the gas flowed into the pipe leading to the south end of the furnace. Two valves must be opened to allow the gas to flow from the main into either pipe that led to the furnace. From each valve a staff or rod passed upward through the "charging floor" and extended three feet above that floor. On the top of each staff was a wheel similar to the wheel in use upon the top of the staff of a car brake. It required about four revolutions of the

wheel on the top of the staff to fully open or close a valve. The three rods and wheels by which the valves to number eight furnace were controlled were placed near to each other and as near to the west wall of the building as was possible and opposite to and about thirty feet distant from the west face of the furnace. The wheels and rods which controlled the valves in the pipes leading to number seven furnace were at least thirty feet away from the valves of number eight, and those which controlled the valves in the pipes leading to number nine furnace were more than fifty feet away from those which controlled the valves of number eight furnace. When the furnaces were in operation there was a foreman melter who had charge of four furnaces and a first helper and an assistant helper for each furnace. The first helper alone had the right to open or close the valves in the pipes which led to his furnace. It was the custom to turn on the gas at one end of the furnace for fifteen minutes, then turn it off and turn it on the other end for the same time and so on alternately.

It became necessary to reline furnace eight and Jones, an independent contractor, contracted with appellant to do the work. The gas was turned off Saturday night. Monday morning Jones came with twenty-five men to reline the furnace and began work upon it. A part of the wall of the south end of the furnace was taken down during the forenoon, leaving an opening into the furnace at that end fourteen feet long. Early in the afternoon of Monday, ten or twelve men employed by Jones, of whom appellee was one, were at work inside the furnace. Appellee was at work near the opening in the south end of the furnace. The upright pipe which was attached to the pipe which led to the south end of the furnace stood leaning against the north end of furnace nine and it so happened that the elbow pointed towards the hole in the south end of furnace eight. Suddenly a column of gas shot out from the elbow with sufficient force to drive it across the open space between furnace nine and furnace eight to the wall at the south end of eight and through the hole that had been

made in that wall into that furnace to the point where ap-
pellee was at work with a lighted torch. The gas was set
on fire by the torch and in an instant there was a column
of flame .fourteen feet long leading from the end of the
elbow into the furnace. Within a few seconds another
employee of Jones, who was near the upright pipe, threw
it down upon the ground and at that moment the flow of
gas was shut off and the flames extinguished, but in the
meantime appellee had been terribly burned and the man
who was at work by his side so burned that he died. The
other men at work inside the furnace were not injured.
Neither the first helper nor the assistant who was employed
on furnace eight when it was in operation, was at the
building on the day of the accident. The foreman melter,
when he saw the flames, ran to the wheels which operated
the valves in the pipes leading to furnace eight and there
found that the valves in both the pipes which led to that
furnace were tightly closed, but that the valve which when
open permitted the gas to flow from the main into the main
branch pipe was opened half way or more and it required
two or three turns of the wheel to close that valve.

KEMPER K. KNAPP and WILLIAM DUFF HAYNIE, for ap-
pellant.

J. WARREN PEASE, for appellee; S. W. POLKEY, of coun-
sel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of
the court.

The declaration in different counts charged that the de-
fendant negligently, etc., caused or permitted gas to escape
into said furnace while plaintiff was there, etc.; that it neg-
ligently, etc., permitted, etc., valves, etc., to become out of
repair so as to permit the gas to escape, etc.; that it negli-
gently, etc., left the pipes in such condition that if the gas
should accidentally be turned on, it would escape into said
furnace, etc.; and that it negligently, etc., failed to guard
or watch the apparatus whereby gas could be turned into

the furnace, by reason whereof, in some manner to the plaintiff unknown, the gas was turned on and admitted into the furnace where plaintiff was and injured him, etc.

Appellee was properly upon the premises of appellant, and it was the duty of appellant to exercise reasonable care to avoid injuring him.

The principal question presented by this record is, whether there is in it evidence from which the jury could properly find, as a fact, that appellant was guilty of negligence which caused or contributed to the injury of appellee.

The gas was turned on suddenly, not gradually. The pipe stood in the open air and if the gas had been turned on gradually the smell of the gas would have been noticed and it was not noticed by any one. A sufficient volume of gas was suddenly turned on to drive a column of gas fourteen feet, from the end of the elbow to the torch by which it was set on fire, and no one noticed that gas was escaping until the gas was ignited. It burned but a few seconds and then was turned off as suddenly as it had been turned on. The throwing down of the pipe had nothing to do with cutting off the flow of gas or extinguishing the flames. Upon this the witnesses for appellant and appellee agree.

The evidence shows that a valve could not be opened by the pressure of gas upon it and certainly a valve could not by such pressure be closed. Two valves were opened and one, the valve in the pipe which led to the south end of the furnace, was opened and in a few seconds closed. It seems impossible that a man in walking by the side of a charging car, between the car and the wheel on the top of the valve rods, while the car was passing along the tramway, by brushing or pressing against a wheel to avoid a car, could turn a wheel even one revolution, and he certainly could not in that manner turn two wheels two revolutions at least and then turn one of them in an opposite direction at least two revolutions, all in the space of a very few seconds. The only inference that can reasonably be drawn from the evidence is that the two valves in question were

opened and one of them closed purposely and intentionally by some person. The act of turning on the gas was wrongful and done in reckless disregard of the safety of the men who were at work in the furnace. But in order to warrant the jury in finding appellant liable for the consequences of such wrongful act, the evidence must warrant the jury in finding, first, that the act was committed by a servant of appellant; second, that such act was within the scope of the employment of such servant and done while engaged in the business of appellant with a view to the furtherance of that business. C., M. & St. P. R. R. Co. v. West, 125 Ill. 320. The evidence in this case is not sufficient to warrant or support either of such findings. There were in the building more men in the service of Jones than there were in the service of appellant, and the evidence shows that men in the service of Jones were near to the valve wheels when the foreman melter reached those wheels immediately after the accident. The only man whose duty it was to open the valves of furnace eight was not at the works on the day of the accident. The first helper at furnace nine was at his proper place when the accident occurred and shut off the gas from furnace nine when he saw the flames at the south end of that furnace. The first helper at furnace seven was at his place in front of that furnace when the accident occurred. The valve wheels of each furnace were nearer to the furnace than they were to the valve wheels of the furnace on either side. There is no ground in these facts for the hypothesis that some servant of appellant whose duty it was to turn the gas into some furnace other than furnace eight, through negligence or mistake, turned the gas on to furnace eight when he intended to turn it on to his own furnace.

It is said by appellee that the jury might properly find that appellant was guilty of negligence from the facts that the valve wheels were not locked or fastened, that they were not watched or guarded and that the upright pipe was permitted to remain upright with the elbow pointing towards the end of the furnace in which appellee and

others were at work. No doubt if the valve wheels had been locked so that the valves could not be opened, or if they had been so watched or guarded that no person could have had access to them to open the valves, or if the upright pipe had been laid down upon the ground before the accident, as it was afterwards, or even if the elbow had been pointed in any other direction than towards the hole in the furnace behind which appellee was at work, the accident would not have occurred. But the fact that the accident was avoidable and might have been prevented does not alone warrant the jury in finding that there was fault or negligence in not anticipating and providing against it.

In the case of C., B. & Q. R. R. Co. v. Stumps, 55 Ill. 367–374, it was said: "The appellants are not responsible for *causing* this accident, *merely*, but only for *negligence* in causing it; and negligence is the omission of the means reasonably necessary, not absolutely necessary, *to avoid injury to others.* * * * When an accident has once occurred, because it is seen, after the event, that the use of a particular precaution would have effectually prevented it, that does not show that it was the duty of the appellants beforehand to have adopted that precaution. The duty was to have used every reasonable precaution, and not every absolutely necessary precaution, *to avoid injury* to individuals.

"*The question is, rather, what would have been the course of a very prudent person prior to the accident; whether he would have thought exposure to injury from such a cause such a probable source of danger as to have required the adoption of any further precautions and safeguards than those used to protect against it.*"

See also Braun v. Craven, 175 Ill. 401; Sjogren v. Hall, 53 Mich. 274; Hubbell v. Yonkers, 104 N. Y. 434; McGowan v. C. & N. W. Ry. Co., 91 Wis. 147.

The works of appellant were enclosed by a high fence and no one was allowed to enter them without express permission. When visitors or strangers were permitted to

go into the building in which the accident occurred, they were always attended by persons employed for that purpose by appellant. The valves for each furnace in operation were under the charge of a single person, the first helper at that furnace. No repairs were to be made of any gas pipes or valves in the building. The accident was a peculiar and most extraordinary one. It is clear that it was caused by the voluntary and intentional act of some one in opening the valves. It is impossible to imagine a cause or motive for such act.

Under the facts and circumstances shown by the evidence there was, in our opinion, no reason to anticipate that any one would attempt to open the valves in the pipes leading to the furnace while appellee was there at work, and appellant was not guilty of negligence in failing to render it impossible for any one to do so.

The doctrine of *res ipsa loquitur* has no proper place in this case. The act which caused the injury was beyond doubt the voluntary and intentional act of some one.

If the evidence in a case shows that a brick fell from an arch or wall, of its own weight, and injured the plaintiff in the case, the inference may be drawn that if the arch or wall had been properly constructed the brick would not have fallen; or if the arch or wall had been properly inspected the fact that it was unsafe and the brick in the same in danger of falling, could have been discovered and repairs made in time to prevent the falling of the brick; and therefore, in either case, the negligence of the person in control of the arch or wall may be inferred from the fact that the brick fell of its own weight. But if the evidence in such a case shows that the brick which fell, fell not of its own weight, but because it was pried out of the arch or wall by some one and thrown down, no such inference of the negligence of the defendant could be drawn from the mere fact that the brick fell from an arch or wall which was in his possession or under his control. C. C. Ry. Co. v. Rood, 163 Ill. 477; Hart v. Washington Park Club, 157 Ib. 9; Benedick v. Potts, 88 Md. 52; Griffin v.

B. & A. R. R. Co., 148 Mass. 146; Kendall v. City of Boston, 118 Ib. 234; Wadsworth v. Boston El. Ry. Co., 182 Ib. 572.

A careful examination of the record in the case leads us to the conclusion that there is in the case no evidence to warrant or support the finding of the jury that appellant was guilty of negligence which caused or contributed to the injury of appellee.

The judgment of the Superior Court will be reversed with a finding of facts.

*Reversed.*