## Michael Shea, Appellee, v. Thomas Elevator Company, Appellant.

## Gen. No. 16,056.

1.   NEGLIGENCE—*when doctrine res ipsa loquitur does not apply.* *Held,* where the injury resulted from a sudden and unexpected lowering of a hoist such lowering being the result of a signal, that the doctrine *res ipsa loquitur* did not apply.

2.   AMENDMENTS AND JEOFAILS—*when refusal of leave to file plea denying ownership and operation, proper.*   *Held,* that it was not error to refuse leave to file such a plea after three years and five months had elapsed from the time when such a plea might have been interposed.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed February 13, 1912.

EDDY, HALEY & WETTEN, for appellant; CHARLES H. PEGLER, of counsel.

JOHN C. KING and JAMES D. POWER, for appellee.

MR. JUSTICE KAVANAGH delivered the opinion of the court.

August 11, 1904, appellee, with three other workmen, was engaged on the eighth floor of the Chicago Postoffice, then in process of construction, wheeling on wheelbarrows from a freight elevator, or hoist, material to be used in the work of construction, and after the barrows had been emptied returning them again to the hoist, where they were lowered to the basement to be again refilled. The hoist was composed of two board platforms, each about 3½ feet wide and perhaps 6 feet in length. The platforms were so operated that when one of them was in the basement the other was being delivered at the floor where the material was desired. The hoist was controlled by an electric motor in the basement about twelve feet from the shaft. For notice of when to lower, the engineer in charge, who was stationed at the motor, depended altogether upon a bell located about four feet away from him. When appellee, or any of the men on the upper floors, desired the hoist lowered he pulled a rope in the shaft causing this bell to ring. The hoist responded quickly to its lever, and the descent was rapid.

Upon the day in question Shea returned with an empty barrow to the hoist, and was in the act of placing it upon the platform when, without any signal from him or from his fellow workmen upon the eighth floor, the hoist was suddenly and unexpectedly lowered, by reason of which he lost his balance, fell to the platform, where the wheelbarrow coming after dropped upon his head causing injuries.

The charge of the declaration upon which the judgment must stand alleges: "That the defendants, by their agents and servants in that behalf, then and there caused said elevator to be suddenly lowered while the plaintiff was in the act of wheeling said wheelbarrow thereon as aforesaid, by reason where-

of," etc. The default described by this count has reference to no act shown by the evidence, unless it includes the conduct of the engineer in charge of the motor, as he was admittedly the one who caused the hoist to be lowered. If he were careless in lowering the hoist the verdict is justified. On the other hand, if there be no evidence of neglect on his part, the judgment cannot be sustained.

Appellee and three other men, who were with him at the elevator on the eighth floor the time the accident happened, testify positively that no signal was given by either of them for the lowering of the hoist. On the other hand, the engineer and four other men, who were in the immediate vicinity of the signal bell, swear that the moment before the hoist was lowered the signal bell rang plainly. If the bell did actually ring, then there was no fault on the part of the engineer in acting as he did, because it was upon the signal and this signal only that he relied. Nor is his evidence, nor that of the other witnesses who stood near him, in any way contradicted, so it must be taken as proven that the signal bell rang before he acted.

The building was a large one, containing many workmen, and there were many persons who might have rung the signal bell without defendants being to blame, so we conclude there is no evidence whatever of negligence in this regard upon the part of appellant. But it is argued that the doctrine of *res ipsa loquitur* applies to the facts of this case. We are not of that opinion. There is no controversy here as to what caused the barrow to descend. The engineer himself testified that he, himself, lowered it. When the cause of the accident is not in question, the doctrine of the maxim has no application. The case of Parsons v. Hecla Iron Works, 186 Mass. 221, furnishes an apt illustration. In that case, the plaintiff was injured by the fall of certain staging caused by the giving

away of uprights supporting it. "The reason for the uprights falling over was that the braces had been knocked off the staging; and the uprights opposite the second elevator well, which were originally built close to the face of the well, had been moved out by some one other than defendant's employes. * * * The cause of the fall of the staging was shown by the defendant, and does not seem to have been in dispute. Under these circumstances the rule of *res ipsa loquitur* is not applicable."

The case of Illinois Steel Co. v. Zolnowski, 118 Ill. App. 209, is to the same effect, and cites several cases in support of its conclusion.

As the case is to be returned for retrial it is necessary for us to determine the remaining important question raised.

Appellant urges that the lower court erred in refusing it leave to file additional pleas denying ownership. The declaration was filed December 9, 1904. Appellant filed his demurrer to the declaration December 22, 1904. It was afterwards demonstrated that the demurrer was not well taken as to several counts, among which latter was the count upon which the cases finally went to judgment. In other words, it turned out that when appellant filed his demurrer to that count he should instead have filed his plea denying ownership if he desired to take advantage of such defense. However, it was not until May 29, 1908, that appellant asked leave to file this plea of non-ownership. This application then came three years and five months after the date when plaintiff, in strict justice, was entitled to have it filed. To hold that such leave should have been given after such delay, when the facts supporting the plea were at all times peculiarly within the knowledge of appellant, would be to encourage dilatoriness in pleading and delay in the administration of justice. The purpose of a defensive pleading is, first, to make an issue; second, to apprise the opposite party

of the facts with which he must contend. To delay to a party this notice for more than three years after it was due, and after means of information perhaps have been lost or witnesses have disappeared, does not commend itself to a speedy and efficient administration of justice.

The permitting of amendments to pleadings and filing of additional defenses is largely in the discretion of the trial court. Cook v. Miller, 11 Ill. 610; People ex rel. v. Chicago & A. R. Co., 172 Ill. 71.

We, therefore, hold there was no error in refusing leave to file the additional pleas.

For the other errors pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*