42        APPELLATE COURTS OF ILLINOIS.

Kennedy v. Chicago & Carterville Coal Co., 180 Ill. App. 42.

## James C. Kennedy, Administrator, Appellee, v. Chicago & Carterville Coal Company, Appellant.

1. MASTER AND SERVANT—*injury due to concealed defect.* Where usual tests for determining the safety of working conditions in a coal mine are made, and a miner of experience, with as much and as good opportunity to know such conditions as the company's manager, is injured by a roof falling, due to a concealed defect in the slate, recovery cannot be had.

2. MASTER AND SERVANT—*liability of master.* To recover for the negligence of a master, a servant is required to prove that the place of his work was defective and that he did not know of such defect and had not equal means of knowing with the master.

3. MASTER AND SERVANT—*safe methods.* The admission of proof that a safer mode could have been adopted for removing a roof of coal in a mine, which had been sounded and appeared solid, by propping it, is error, the question being whether the mode adopted was reasonably safe.

4. MASTER AND SERVANT—*liability of master.* It is the duty of a master to use reasonable care to provide his servants with a reasonably safe place to work, and he is liable for the negligent performance of such positive obligation, whether he undertakes its performance personally or through another.

5. MASTER AND SERVANT—*duty of master.* Where a servant is placed at a work with which he has no acquaintance, and concerning which he is not informed, the burden is cast upon the master to see that the servant is not exposed to dangers unknown to him.

6. MASTER AND SERVANT—*requisites for master's liability.* In a suit against a master for negligence, it is essential that a negligent order should have been given and that the master knew, or by the exercise of reasonable care might have known, of the danger at the place or in the manner of performance.

7. MASTER AND SERVANT—*accidents.* The mere happening of an accident does not necessarily show that a place of work was unsafe or that the master was negligent in ordering a servant to work in a place not reasonably safe.

8. MASTER AND SERVANT—*pleading knowledge of danger.* A declaration for negligence against a master need not allege that plaintiff did not have equal means with the defendants of knowing the danger.

9. MASTER AND SERVANT—*verdict against weight of evidence.* Verdict for damages for death of a coal miner caused by the falling of a roof, *held* manifestly against the weight of evidence.

Appeal from the Circuit Court of Williamson county; the Hon. BENJAMIN W. POPE, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed March 10, 1913. Rehearing denied May 29, 1913.

DENISON & SPILLER, for appellant; MASTIN & SHERLOCK, of counsel.

NEELY, GALLIMORE, COOK & POTTER, for appellee.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

A judgment was obtained in the Circuit Court of Williamson county against the defendant for $3,000, to reverse which this appeal is prosecuted.

On May 7, 1911, John Kennedy was killed in the defendant's mine by the falling of coal and slate from the roof of the entry which he was engaged at the time in taking down. There was a low place in the roadway in the seventh north entry off the fourth east entry in defendant's mine, which place was wet and muddy and interfered to some extent with the operation of the motor used in hauling coal. On Saturday, May 6th, John Kennedy had been at work in this entry at this low place and as Flynn, the mine manager, passed through there Kennedy said to him, "I can't get this road in shape like it ought to be; this mud ought to be cleaned up and this road filled up with ashes." And Flynn said to him, "Will you want to work tomorrow on it," and Kennedy said, "Yes;" and Flynn then said, "How many men do you want," and Kennedy said, "A couple besides myself," and Flynn said, "All right," and he then had the ashes taken in there and sent Morris and Proudlock with Kennedy. On the next day they began the work and Corcoran, the assistant mine manager, also came to assist them in this work. After raising the track it became necessary to take down a part of the roof so as to allow the motor to pass through without dragging off the coal and a Mr. Long was called in to assist in this work.

44    APPELLATE COURTS OF ILLINOIS.

Kennedy v. Chicago & Carterville Coal Co., 180 Ill. App. 42.

There was about ten or twelve inches of coal which extended to a feather edge on the face of the slate roof. When they were ready to remove the coal Corcoran, the assistant mine manager, as stated by one of plaintiff's witnesses, examined the roof and found a potted or soft place in the roof and at that time said it did not look like it was going to get good but afterwards he took down this soft place and then said it was all right to go ahead and that after this soft place was taken down the witness says the roof seemed solid and he went to cutting on one side of the entry and Corcoran on the other. He says Corcoran showed them how to do the work by cutting the coal on the side and wedging it down; that from time to time during the progress of the work they sounded the roof and pronounced it solid. The mine manager had measured off the part of this roof that was to be taken down, which was about thirty feet. Two of the men worked from the east end and two from the west end, working towards each other. About half an hour before the accident Corcoran left the place and the others remained at the work and about five minutes before the accident there was a pop in the roof and the men jumped back and Kennedy then sounded the roof and said it was solid and they proceeded with the work, as before, and had completed the whole of it except about four feet when the fall occurred. There were several tons of the coal and slate fell and caught Kennedy and crushed him to death. Kennedy had been at work for the appellant for about two years and, as appears from the evidence, was a miner of many years experience; had been a mine foreman in some mine in Oklahoma for about five years, and that he had dug coal in Ohio and Alabama; had acted in the capacity of assistant mine manager for the defendant for four or five years, had papers in this state as a mine examiner and was a practical coal miner and competent to perform the duties of assistant mine manager, and to take down top coal and timber entry ways. That

Kennedy v. Chicago & Carterville Coal Co., 180 Ill. App. 42.

during the time he had worked for defendant his general business was track layer but during this time he also acted as assistant mine manager for four or five weeks; that he had been engaged in opening up places where there was gas to contend with, to create a place for an over cast and had been called upon to do and perform any kind of work in the mine, and was regarded by the mine manager as competent to perform any kind of dangerous work and had from time to time performed for the defendant work of this character.

The several counts of the declaration upon which this case was submitted to the jury allege that the defendant negligently furnished plaintiff's intestate a dangerous place in which to work and removed him from his regular employment as track layer and put him to work at a different character of work, which was more dangerous than his usual work of track layer. The taking down of the coal, slate and rock from the roof of the entry was dangerous, in this, that the coal, slate and rock in such roof were loose and rotten and apt to fall when struck by picks and bars, which said character of work and the dangerous method of doing it plaintiff's intestate was not so well acquainted with as defendant. That defendant knew or by the exercise of reasonable care could have known that the place was dangerous and the deceased was not acquainted with the dangers of taking down such coal, slate and rock. That the deceased did not know the dangers of taking down the same and did not have equal means with the defendant in knowing thereof, nor that such work was more hazardous than his usual employment of track laying, and did not have equal means of knowing thereof; and that in consequence of defendant's negligence in taking plaintiff's intestate from his regular employment as track layer and placing him in a more hazardous employment of taking down the coal in the roof of said entry, and while deceased was in the exercise of due care he was killed.

The second count charges the same as the first except that it alleges that on account of a squeeze in the entry that the roof was reasonably apt to fall when struck with picks.

Another count alleges that defendant's foreman in charge of said work negligently ordered the deceased, together with other men to take said roof down in a dangerous manner; in this, to go under the same and with pick, wedge and sledge and pick, wedge and sledge the same down.

Another count alleges that the defendant by its foreman negligently ordered the deceased, with other men, to take the coal, slate and rock down from the roof in a dangerous manner, that is to say, to go under said roof and begin with picks at the edge or margin of said sag and to take said roof down and come facing each other until said workmen should meet in the middle or center of such low place, and that such method was dangerous and so known to be by the defendant and was not known by deceased, and that he did not have equal means of knowing it.

It is contended by counsel for appellant that before there can be a recovery in a case of this kind the burden is upon the plaintiff to prove by a preponderance of the evidence that the place, appliances, method or thing charged as being defective, is defective, as alleged; that the defendant knew thereof or could have known thereof by the exercise of reasonable care; that the deceased did not know thereof and did not have equal means with the defendant of knowing thereof, and the deceased himself was, with reference to the injury, exercising reasonable care for his own safety.

It is true as contended by counsel for appellee that it is the duty of the master to use reasonable care to provide its servants with a reasonably safe place in which to work, is a positive obligation, and he is liable for the negligent performance of such duties whether he undertakes its performance personally or through another. *Himrod Coal Co. v. Clark,* 197 Ill. 514. It is charged by this declaration that the deceased was

placed in a dangerous place to work which was known to the defendant or by the exercise of reasonable care could have been known to it, and that deceased did not know of its dangers and did not have equal means with the defendant of knowing it. It is true, it appears from the evidence, that, in the prosecution of the work, a clod fell and killed John Kennedy, but what was the apparent condition prior to the fall and during the time the men were engaged at work in taking down this coal? The evidence is overwhelming that prior to the accident the men there engaged at work did from time to time sound the roof and that it appeared to be solid. The only time any fault in the roof was shown to exist was prior to the commencement of the work, when Corcoran, the assistant mine manager, sounded the roof and found a soft place which he removed and after this soft place was removed the same witness then says the roof became solid and continued so up to the time of the fall, and some of the witnesses say that the fall was occasioned by a fault in the slate which could not be seen by anyone.

It is contended that there was a squeeze on in the mine, near this entry, which made it dangerous. We have examined this record carefully and practically all of the witnesses say that the squeeze did not extend to this place; that a squeeze is evidenced by the bulging up of the bottom, or pressure upon the pillars, causing them to chip off and that no such evidences were present; and they further say that some of the coal remained upon this roof. One witness testified that he thought the squeeze extended to this entry but on cross-examination he did not know whether there was an upheaval of the bottom or crushing of the pillars or not, he did not examine it. The other witnesses did examine it and say that no such thing occurred. Practically all of the witnesses for appellee and appellant who had any knowledge upon this subject say that from the time of the removal of the soft spot above referred to by Corcoran, that the roof continued solid.

48 APPELLATE COURTS OF ILLINOIS.

Kennedy v. Chicago & Carterville Coal Co., 180 Ill. App. 42.

It seems to us from this evidence that any reasonable person would have been justified in concluding that the place in which the men were engaged at work, and their manner of performing it was reasonably safe. It is contended, however, that when the coal or slate is soft or brittle that it would be safer to timber it and many witnesses were put upon the stand to prove that it would be safe in taking down coal, that was soft or brittle, to timber it, but all of these witnesses admitted upon cross-examination that if the roof when sounded appeared solid that there was no necessity for propping and that it would be practical to cut the coal and wedge it down as was done in this case. Proof was offered as to other safe modes of taking down this coal, and it was doubtless made to appear to the jury that these modes were safer and should have been adopted. The question before the jury, however, was not as to whether other modes were safe or safer, but was the mode adopted reasonably safe, and our Supreme Court has held it to be reversible error to show that a safer mode could have been adopted. *Brossman v. Drake Standard Machine Works,* 232 Ill. 412; *Casey v. Reedy Elevator Mfg. Co.,* 142 Ill. App. 126. We believe that it appears from this evidence that the defendant's representatives and the deceased both believed the place at which they were engaged at work to be reasonably safe, and that it is not made to appear that there was any reason why the representatives of the defendant could have believed otherwise. They, as well as others that worked with them and the deceased, applied the usual test for determining its safety, and we think sincerely came to the conclusion that it was safe to work under. We think that John Kennedy was a man of experience and that he had as much opportunity to know the conditions and as to whether they were reasonably safe or not as the defendant's managers. It in fact appears from the record that about thirty minutes before the fall came the defendant's manager had gone to some other part of

the mine and that in the meantime there was a pop in the roof which caused the men to jump back, and John Kennedy then tested the roof and proceeded with the work. It certainly looks as if his opportunities were as good as anyone to know the real condition of that roof; and if this be true then under the doctrine laid down by our Supreme Court it is not only necessary to prove that the place was defective but the plaintiff must also prove that he did not know of the defect and had not equal means of knowing with the master. *Montgomery Coal Co. v. Barringer,* 218 Ill. 327; *Goldie v. Werner,* 151 Ill. 551. One of the witnesses who helped to remove the fall after the injury says that the slate was hard, that they had to take a sledge to break it up and this confirms the statement of other witnesses that it appeared solid in the roof, and that the fall probably came from the fault in the slate which was concealed from everyone.

It is contended, however, by counsel for appellee, that the deceased was taken from his usual work and was at this time engaged at work under a specific order given by the defendant. Each count of the declaration alleges that the deceased was taken from his usual work; charges that the defendant knew of such dangerous condition or could have known thereof by the exercise of reasonable care, and that the plaintiff's intestate did not know the dangers and did not have equal means with the defendant of knowing thereof, which, as we understand the law, it was necessary for the plaintiff to allege to entitle him to recover. *Wiggins Ferry Co. v. Hill,* 112 Ill. App. 475. As we have before observed, the appellee has failed to prove some of the material averments above set forth but aside from this we do not believe that the principle invoked by him is applicable to the facts in this case. The deceased was shown by the evidence to be a capable man, one of many years experience in mining, having had several years experience as mine foreman, was experienced in taking down and removing coal and slate

from the roof of a mine, had been engaged in track laying and had in fact, in this mine, pursued to some extent each one of these particular occupations and was relied upon and used as a man for that purpose on account of his skill to care for and repair dangerous places in a mine. The mere fact that he had, on the day previous, been engaged in the particular business of track laying and was taken from that work and placed at a work that he understood, had heretofore performed and was experienced in and knew about, would not bring him within the rule of having been transferred from his regular business to a work to which he had no acquaintance. It is the fact of the servant being placed at a work with which he has no acquaintance, concerning which he is not informed, that the burden is cast upon the master to see that he is not exposed to dangers unknown to him. We think the facts are that the deceased was as well acquainted with the work in which he was engaged as the assistant mine manager or any other person employed in this work at that time. It was necessary for the plaintiff to allege and prove that the order was negligently given, and to make it a negligent order it was necessary to prove that the place to which the servant was sent to perform the work or the manner of its performance was not reasonably safe and that the master knew it or could have known it. It is said in the case of *Swiercz v. Illinois Steel Co.*, 231 Ill. 462: "The issue on trial was the negligence of the defendant. It was essential to the plaintiff's case that the order should have been negligently given. It was necessary to prove that the defendant knew, or by the exercise of reasonable care might have known, of the danger." We do not believe that even if it is assumed that an order was given that the place to which deceased was put to work was not reasonably safe, the mere happening of an accident does not necessarily show that the place was unsafe or that the master was negligent in putting the servant at work in a place not reasonably safe.

There are many other errors assigned by counsel for appellant which we do not believe it necessary for us to pass upon. It seems to us from a fair and impartial consideration of this evidence that the verdict of the jury was manifestly against the weight of the evidence; that the court erred in the admission of testimony as above indicated, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*