## Inez Schuman, Administratrix of the Estate of Elmer Schuman, Deceased, Appellee, v. Bader & Company, Appellant.

1. DEATH BY WRONGFUL ACT—*admissibility of evidence of changed condition after accident.* In an action for damages against an elevator company for the death of a railway brakeman claimed to have been knocked from the top of the train by an elevator spout, it is error to admit proof that the spout had been cut off subsequently to the accident, even though such evidence was admitted for the sole purpose of showing the conditions on the day of the accident.

2. HARMLESS ERROR—*exclusion of evidence of matters otherwise proven.* The refusal of the court to admit evidence that at the time of the accident which resulted in decedent's death, decedent, the railway company which employed him and the defendant, who is charged with the negligence which caused his death, were all subject to the provisions of the Workmen's Compensation Act is not error where the evidence shows the act is inapplicable because decedent was engaged in interstate commerce at the time of the accident.

3. EXAMINATION OF WITNESSES—*right of cross-examination as to compensation of witnesses for time lost.* In an action for damages for death by wrongful act, it is error to refuse to permit cross-examination tending to show that the expenses of the witnesses in attending court are being borne by one interested in the result but not a party to the suit.

4. ARGUMENTS OF COUNSEL—*right in negligence case to comment on liability of third person.* In an action for the death of a freight brakeman by the wrongful act of defndant where there is evidence tending to show liability on the part of the railroad company by which decedent was employed, it is error to refuse to allow defendant's counsel to comment upon the relation of decedent's witnesses to the railroad company and the latter's liability for the injury.

5. EVIDENCE—*recital of past event inadmissible as res gestæ.* In an action for the death of a railway brakeman who is claimed to

have been knocked from a freight car by the spout which protruded from defendant's grain elevator, it is error to permit a witness to testify as part of the *res gestæ* that immediately following the accident decedent asked witness what hit him and witness replied "the elevator spout," where the remark was made after the witness had alighted from the car on which he was riding, had gone to procure a doctor and had then returned to the scene of the accident, and especially where the witness did not see the spout hit decedent.

6. DEATH BY WRONGFUL ACT—*proof of actionable negligence by defendant requisite to recovery.* A judgment against an elevator company for the death of a railway brakeman, based on the claim that such brakeman was knocked from a freight car by a protruding spout on the grain elevator, is not supported by the weight of evidence where there is no proof of any duty on defendant's part to protect decedent from the injury received except a duty to refrain from wantonly or wilfully injuring him, and there is no evidence that the elevator spout or the elevator itself was on the right of way or that either spout or elevator extended beyond defendant's property line.

Appeal from the Circuit Court of Fulton county; the Hon. G. O. DIETZ, Judge, presiding. Heard in this court at the April term, 1921. Reversed and remanded. Opinion filed July 10, 1922.

DAILEY, MILLER, McCORMICK & RADLEY, for appellant.

BURNETT M. CHIPERFIELD and CLAUD E. CHIPERFIELD, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

Elmer Schuman, in his lifetime, was a brakeman running on a C., B. & Q. freight train between Beardstown and Rio, Illinois. On the morning of November 20, 1917, while engaged in switching cars in passing the elevator of appellant in Table Grove he either fell or was knocked from a freight car and run over and injured so that he died the next day. It is claimed that he was knocked from the car by a spout extending out from the elevator towards the switch track. Appellee brought suit in the circuit court of Fulton coun-

ty against Bader & Company, and recovered a judgment for $10,000 damages for the pecuniary loss caused by his death. From the judgment so recovered, this appeal is prosecuted.

Appellee was allowed to prove, over the objection of appellant, that the elevator spout had been cut off some two feet two or three months after the accident, and this action of the court is assigned as error. The question of negligence was to be determined with reference to conditions at the time of the accident, and evidence of repairs or changes in condition having a tendency to repair the evils complained of are not competent in the first instance. Such evidence sometimes becomes competent in rebuttal where the defendant has offered evidence of conditions existing subsequent to the change. *Hodges v. Percival,* 132 Ill. 53; *City of Bloomington v. Legg,* 151 Ill. 9; *City of Taylorville v. Stafford,* 196 Ill. 290. While at the time the evidence was offered it was expressly stated that it was limited to the one purpose of showing the conditions on November 20, 1917, yet such evidence was not then necessary for that purpose as appellee introduced other witnesses who testified to measurements made before the change. Limiting it to the one purpose could not eradicate the improper influence of such testimony from the minds of the jury.

Complaint is made of the refusal of the court to allow the introduction of evidence to show that appellant, the C., B. & Q. Ry. Co., and deceased were all subject to the provisions of the Workmen's Compensation Act. Where an employee of a corporation which is under the Workmen's Compensation Act is injured through the negligence of another who is also subject to the provisions of the act, unless the injured person at the time is engaged in interstate commerce, the injured person has no cause of action against the party guilty of negligence, but must resort to a claim against his employer. *Goldsmith v. Payne,* 300 Ill.

119. Whether or not a person in a given operation is engaged in interstate or intrastate commerce is ordinarily a question of fact for the jury and when there is any dispute as to such fact, evidence is competent to show that all three parties are subject to the act. In the present case, however, appellant was not prejudiced by the refusal of such evidence as the evidence shows that deceased at the time of the accident was engaged in interstate commerce.

It is assigned as error that the court unduly restricted the cross-examination of appellee's witnesses in refusing to allow them to be interrogated as to who was paying for their time while in attendance upon court. It is competent to show that the expenses of a witness in attending court is being borne by a party interested in the case as bearing upon the relation of the witness to the parties interested and his interest in the result of the case. *Paden v. Rockford Palace Furniture Co.,* 220 Ill. App. 534.

When counsel for appellant was making his closing address to the jury, the court refused to allow him to comment upon the relations of appellee's witnesses to the C., B. & Q. Ry. Co. and to the fact that it was liable for the injury. Ruling on this matter the court stated: "The C., B. & Q. is not a party. There is nothing in the evidence tending to show any liability on the part of the C., B. & Q. railway and any discussion as to its liability an objection will be sustained." The evidence in the record did tend to show a liability on the part of the railroad company. *Illinois Cent. R. Co. v. Welch,* 52 Ill. 183; *Chicago & I. R. Co. v. Russell,* 91 Ill. 298; *Chicago & A. R. Co. v. Stevens,* 189 Ill. 228; *Illinois Terminal R. Co. v. Thompson,* 210 Ill. 226; *Illinois Cent. R. Co. v. Fitzpatrick,* 227 Ill. 478; *Devine v. Delano,* 272 Ill. 174. It was therefore competent for appellant's counsel to refer to this fact and argue that deceased came to his death through the negligence of the railroad company and not through the negligence of appellant.

It is claimed by appellant that there was prejudicial error in permitting testimony of the witness Trainor to go to the jury to the effect that Schuman asked Trainor what hit him and Trainor replied "the elevator spout," while Schuman was lying upon the ground just after the accident.

In *People v. Willy*, 301 Ill. 307, where deceased who had just been shot twice by the defendant called to his wife, who appeared upon the scene, within a few seconds prior to the firing of the fatal shot, "He shot me twice" it was said: "It is argued by counsel for the State that this statement of the widow as to what deceased said to her during the transaction was admissible as a part of the *res gestæ*, while counsel for plaintiff in error insist that it was a mere recital by the deceased to his wife as to what had happened theretofore; that this statement was made by the deceased before he was mortally wounded, and was not his dying declaration or any part of the *res gestæ*. *Res gestæ* has been defined as 'those circumstances which are the automatic and undesigned incidents of a particular litigated act and which are admissible when illustrative of such act.' (1 Wharton on Evidence, sec. 258.) The 'ground for the admissibility of such declarations is that they are the natural and spontaneous utterance of the declarant so closely connected with the transaction in question as to be, in effect, a part of it, there having been no opportunity for premeditation or design.' (1 Elliott on Evidence, sec. 538. See also, to the same effect, *McMahon v. Chicago City Ry. Co.*, 239 Ill. 334; *Di Prisco v. Wilmington City R. Co.*, 4 Pennew. (Del.) 527; *Kenney v. State* (Tex. Cr.), 79 S. W. 817; and see 11 Encyc. of Evidence, 300, 314, inc., and cases there cited.) 'In other words, they must stand in immediate causal relation to the act and become part either of the action immediately producing it or of the action which it immediately produces. Incidents that are thus immediately and unconsciously associated with an

act, whether such incidents are doings or declarations, become in this way evidence of the character of the act.   Under the rule before us, evidence in homicide trials has been received of the exclamations of the defendant at the time of the attack; of the cries of the deceased and of others assaulted at the same time; of statements of the deceased at the time or so soon before or afterwards as to preclude the hypothesis of concoction or premeditation, charging the defendant with the act.   * * *   On the same principle the cries of a mob led by parties tried for riot and unlawful meeting can be received against the defendants, no matter at what time during the continuance of the riot such cries were uttered, but the comments and criticisms of such observers cannot be introduced as *res gestæ.*' (Wharton on Crim. Evidence, 1884 Ed., sec. 263.)

''In discussing the reason why the courts have held statements admissible as part of the *res gestæ,* it has been said that they are not strictly exceptions to the rule against the admission of hearsay testimony.   That fundamental requisite is lacking in this class of cases. 'On the other hand, they clearly do involve the testimonial use of the assertion to prove the truth of the fact asserted,—for example, when the injured person declares who assaulted him, or whether the locomotive bell was rung, or whether the bystander at an affray exclaims that the defendant shot first.   Such statements are genuine instances of using a hearsay assertion testimonially, i. e., we believe that Doe shot the pistol or that the bell was rung, because the declarant so asserts, which is essentially the feature of all human testimony.   There was a time when the state of the judicial precedents was such that no established exception of this tenor could yet be said to exist.   * * * Since the courts actually do admit a class of statements to which prohibition of the hearsay rule applies, since we must share our treatment of the law of evi-

dence by what the courts do and not by what they say, the time seems to have come to call those things by their true name,—in other words, to recognize the existence of this exception to the hearsay rule. The limits of the exception may be elusive and the practice in different courts may vary, but that the core and substance of such an exception is universally accepted cannot be open to doubt.' (3 Wigmore on Evidence, sec. 1746.)

"This author in the same section states: 'Whenever, therefore, an utterance of a witness is used as testimony that the fact asserted in it did occur as asserted, i. e., on the credit of the speaker as a credible person, it is being used testimonially and is within the prohibition of the hearsay rule.' In *State v. Pomeroy,* 25 Kan. 349, the court held that the declarations of the injured person made in the absence of the accused from three to five minutes after the transaction to a witness who ran to his assistance on hearing his cries of murder, * * * was not admissible, as it was mere hearsay. In *Regina v. Redingfield,* 14 Cox's Crim. 341, on an indictment for murder, it appearing that the deceased, with her throat cut, came suddenly out of a room in which she left the prisoner, who also had his throat cut and was speechless, and that she said something immediately after coming out of the room and a few minutes before she died, the question being whether it was murder or suicide, the court held that her statement was not admissible either as a dying declaration or as part of the *res gestæ.*

"While the authorities on the question as to whether the statements made by the deceased at the time of the homicide could be admitted as a part of the *res gestæ* are not always in harmony, yet it is clear that the question is decided largely on the particular facts connected with each case. We are disposed to think that on reason and authority the statement of the deceased, in the hearing of his wife, that 'he shot me

twice,' under the circumstances of the case could hardly be considered part of the *res gestæ*.''

In the present case, previous to the statement claimed to be part of the *res gestæ* being made, after the accident the witness Trainor had got down off the car upon which he was, gone to the elevator a short distance to have the man in charge send for a doctor and came back to the scene of the accident. This evidence was not an involuntary exclamation, but contained a recital of a past event made by a person other than the injured party and was particularly improper as the witness Trainor who made the reply ''The spout hit you'' did not see the spout hit him.

Complaint is made that one of the attorneys for appellee was guilty of misconduct on the trial in the manner of his treatment of the court, witnesses and opposing counsel and that he indulged in improper argument to the jury, prejudicial to appellant. While misconduct of this character constitutes reversible error (*Wright v. Upson*, 303 Ill. 120), we will refrain from examining this record to ascertain whether or not the complaint is well founded, as we assume that if this case is retried the attorney in question will be particularly careful that not the slightest suspicion of grounds for complaint in this respect will be found in the record of the trial.

It is contended by appellant that the judgment is not supported by the weight of the evidence. In *McClure v. Hoopeston Gas & Electric Co.*, 303 Ill. 89 [21 N. C. C. A. 534], it was said: ''This court has stated, in harmony with the authorities on the question, that 'the essential elements of a cause of action for negligence are: (1) The existence of a duty on the part of the person charged to protect the complaining party from the injury received; (2) a failure to perform that duty; and (3) an injury resulting from such failure.' '' Liability cannot be based upon surmise, guess or conjecture, but every essential element of a cause of ac-

tion must be proven by competent evidence to entitle a plaintiff to recover. *Vulcan Detinning Co. v. Industrial Commission*, 295 Ill. 141; *Royster v. Murdock*, 220 Ill. App. 662. It was therefore necessary in the present case to prove the existence of a duty on the part of appellant to protect deceased from the injury received. The evidence entirely fails to show facts from which such a duty would arise. The only duty which appellant owed deceased, so far as is shown by the evidence in this case, was a duty to refrain from wantonly or wilfully injuring him. There is no evidence whatever that the elevator spout or the elevator itself was on the right of way of the railroad company or that the spout extended beyond the line of appellant's property and there is no evidence in the record to show that both elevator and elevator spout were not entirely upon appellant's own property.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*