Allison Brown, Administratrix of Estate of George
Brown, Deceased, Plaintiff-Appellee, v. Sterling
Abrasives Division of Cleveland Quarries Com-
pany, Defendant-Appellant.

Gen. No. 10,798.

Second District.

February 17, 1955.

Released for publication March 8, 1955.

Huber, Reidy & Katz, of Rock Island, for appellant; Isador I. Katz, and C. C. McAndrews, both of Rock Island, of counsel.

Angerstein & Angerstein, of Chicago, and Bozeman, Moran & Klockau, of Moline, for appellee; Virgil Bozeman, of Moline, and Charles T. Shanner, of Chicago, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Allison Brown, administratrix of the estate of George Brown, deceased, started a suit in the circuit court of

Rock Island county, against Sterling Abrasives Division of the Cleveland Quarries Company, a corporation, to recover damages for the death of George Brown, deceased, because of the alleged negligence of the defendant company. The case was tried before a jury that rendered a verdict in favor of the plaintiff for $20,000 and judgment was entered upon this verdict in favor of the plaintiff. The defendant filed a motion for judgment notwithstanding the verdict, and for a new trial. Both motions were denied. This appeal is taken to reverse that judgment and secure the entry of an order in this court for the defendant notwithstanding the verdict, or in the alternative for a new trial.

The complaint was filed in May 1953, and the defendant filed its answer in June of the same year. The complaint charged that the plaintiff was the duly appointed administratrix of the estate of George Brown, deceased; that the said George Brown on and before November 26, 1952, was an operator of a certain grinding wheel at Moline Iron Works, and the wheel was properly mounted on a stand or frame, and that the plaintiff's intestate and all of his heirs at law and next of kin, were in the exercise of due care and caution for their safety; that prior to November 26, 1952, the defendant company manufactured and sold to the Moline Iron Works said grinding wheel for the purpose it was being used by the plaintiff's intestate.

The complaint then charges that the defendant company was negligent in the manufacture and sale of said wheel in one or more of the following respects: "(a) Carelessly, negligently and improperly manufactured said wheel. (b) Carelessly, negligently and improperly delivered the wheel to the Moline Iron Works without proper inspection. (c) Carelessly, negligently and improperly manufactured the wheel so that in places it was soft and porous. (d) Carelessly, negligently and improperly manufactured said wheel so that

4

it lacked hardness necessary for the purpose for which it was intended. (e) Carelessly, negligently and improperly rebaked said wheel after it had been manufactured contrary to good practice in the trade. (f) Carelessly, negligently and improperly delivered said wheel to Moline Iron Works without marking on said wheel the speed at which it might safely be operated, contrary to good practice in the trade"; that as a result of one or more of said wrongful acts, on November 26, 1952, while plaintiff's intestate was using the wheel for purposes for which it was designed, manufactured and sold to the Moline Iron Works, said wheel shattered and burst, and parts thereof struck various parts of plaintiff's intestate's body, as a direct result of which he died on November 26, 1952. The plaintiff claimed damages in the sum of $20,000.

The defendant filed its answer and admitted that Allison Brown was the duly qualified administratrix of the estate of George Brown, deceased, and that said George Brown was employed by the Moline Iron Works on the day mentioned, and was operating the grinding wheel, but denied that the wheel was improperly mounted on a suitable frame and denied all acts of negligence on the part of the defendant that caused the death of plaintiff's intestate and denied that the plaintiff was entitled to any damage.

The appellant contends that the court erred in not sustaining its motion for judgment notwithstanding the verdict, because the evidence failed to show that the defendant was guilty of any negligence that was the proximate cause of plaintiff's injury, and that plaintiff's intestate himself was guilty of contributory negligence in operating the machine. There is no dispute but that George Brown was operating the grinding wheel .in the usual manner that he had been doing before, and that the wheel broke, and part or parts of it struck Brown, which caused his death. It is claimed

5

by the appellee that it was because of the faulty construction of the wheel in question that caused it to break while it was being operated, and parts of the stone struck Brown and killed him.

The evidence shows that Brown himself had no control over the wheel as to the speed at which it was being operated. The appellant claims that there was no competent evidence at the trial to establish the negligence of the defendant company as charged in the complaint. The plaintiff called as a witness, Edward C. McLean, an industrial engineer of Chicago, Illinois. Mr. McLean stated in detail his experience as such an engineer (without any objection of the defendant), and told of different tests that he had made in regard to such wheels, and the examination that he had made of the fragments of the wheel in question. Plaintiff's exhibit no. 5 shows the fragments of the wheel. McLean testified as to the proper way to manufacture such wheels and the appellant in its brief claimed that they manufactured this particular wheel in question according to the formula that McLean said it should be made. Mr. McLean testified that the wheel in question was defective in its manufacture; that the parts of the wheel as being prepared for manufacture had not been properly mixed or bound together and he gave his reasons for this opinion, that an examination of the fragments of the wheel shows that the grains in the wheel were not broken, which would indicate that it was not well bonded and held together; that in a properly constructed wheel the grains would break in two, which would indicate that it was well bonded and held together. An expert called by the defendant company testified that he had examined the wheel in question, and that the grains in the wheel were broken and that indicated to him that the wheel was properly constructed and well bonded. The jury heard both of these witnesses testify and observed their demeanor while on

6

the witness stand. It was their peculiar province to decide which one of these men was more worthy of belief. They evidently found that the plaintiff's testimony was more worthy of belief than that of the defendant.

The plaintiff asked this question of the witness, McLean. "In your opinion, based upon a reasonable degree of scientific certainty, does the diameter of the flange have any effect upon the likelihood or the unlikelihood of a vitrified grinding wheel breaking?" Over the objection of the defendant the witness was permitted to answer and he said, "It does not have a particular bearing on the ability of a wheel to break," and the following question was asked Mr. McLean. "Have you an opinion, based upon a reasonable degree of scientific certainty and based upon your own examination of this wheel, as to what might or could have caused it to burst?" Over the objection of the defendant he was permitted to answer and he stated, "I believe the wheel failed because of a lack of uniformity in structure," then he gave his reasons therefor.

■ There is no dispute in the evidence in this case but that the wheel in question broke and some of the fragments struck plaintiff's intestate and killed him. Under such circumstances our courts have frequently held that a man skilled in such matters may give his opinion of what caused the injury. The leading case on this subject is City of Chicago v. Didier, 227 Ill. 571. The court was there considering the question as presented here and in their opinion we find the following: "There is some apparent confusion in the authorities on the question as to whether, in such cases as this, a medical expert may be asked his opinion as to whether the physical conditions of the injured party are the result of the injuries complained of. Where there is a conflict in the evidence as to whether the plaintiff was injured in the manner claimed, it is not

7

competent for witnesses to give their opinions on that subject; but where there is no dispute as to the manner of the injury, and the question is as to whether certain physical conditions were caused by the injury complained of, and the determination of the question involves a special skill or trade, or a knowledge of science that does not come within the experience of laymen possessing the education or knowledge common to those moving in the ordinary walks and engaged in the ordinary occupations of life, then persons possessing the special knowledge, skill or science may give their opinions on the subject. Appellant contends that the inquiry should be as to whether the injury might have produced the physical conditions, and not whether it did produce them. Expressions will be found in some cases tending to support that view, but the weight of authority in this State, as well as in other jurisdictions, does not support appellant's contention."

The court, after reviewing other cases that might seem to be in conflict with the rules thus promulgated, then concludes as follows: "We think the apparent confusion of the authorities arises from a failure to distinguish between cases where the manner in which the injury is received is admitted and cases where the manner of the injury is denied."

City of Chicago v. Didier, supra, has been cited many times and approved, both by our Supreme and Appellate Courts. In The People v. Minzer, 358 Ill. 345, it is there stated: "None of his witnesses denied the fact that the deceased had been strangled. In cases where there is no dispute as to the manner and cause of the injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, this court has held that a physician may then directly testify that a later malady was or was not caused by the accident or original injury, upon the same principle

8

that he may testify that death resulted from a certain wound."

■ Under the facts and circumstances in this case, it is our conclusion that the court did not err in permitting the expert witness to testify that in his opinion it was the faulty construction in the manufacture of the wheel that caused the wheel to break.

■ The evidence shows that this wheel was mounted on the same frame that George Brown had been using for several years and there had been no trouble with any of the other wheels that he had been using that was manufactured by the defendant company. The defendant claims that the wheel was not properly mounted, but this was a question of fact for the jury's determination, and they evidently decided that it was properly mounted.

■ The appellant claims that the case should be reversed on account of the misconduct of plaintiff's attorney and especially he claims that there was prejudicial error in the questions that the attorney asked the witnesses on cross-examination. The court told lawyers for both the plaintiff and the defendant that he would instruct the jury to disregard the questions and requested the attorney for the defendant to present such an instruction, but defendant's counsel refused to present such an instruction. In the case of Beery v. Breed, 311 Ill. App. 469, it is stated: "Appellant did not ask the Court to instruct the jury to disregard the remarks, . . . Ordinarily he should not now be permitted to urge the objection." The question asked the witness, while it was improper, it seems to us it is not such a question as would be reversible error. The other objection that appellant complains of is the argument of plaintiff's counsel to the jury. It is a well-known fact that arguments to the jury are for the purpose of presenting the case in the best light they

9

can for the jury's consideration. It is largely in the discretion of the court whether he will, or will not, sustain objections to the argument. On the whole, we cannot say from a review of this evidence that the attorney for the plaintiff was guilty of such misconduct that the verdict of the jury should be set aside.

Mr. Anderson, the foreman of the Moline Iron Works testified that he had supervision of the grinding wheels, and that he knew George Brown had been employed at the Moline Iron Works for twelve years or more; that he was a very careful worker and attended strictly to his business. There had been no change in the speed at which the wheels were operated for several years prior to the time of the accident to Mr. Brown, and they had never had any trouble with the wheels breaking before. The evidence also shows that this particular shipment of wheels was a special order, and did not contain any instructions either on the wheels, or otherwise, at what speed these particular wheels should be operated.

Charles E. Rinker was called as a witness on behalf of the plaintiff and testified that he lived in Rock Island, Illinois, and that he was formerly the local representative of the Sterling Grinding Wheel Company and had sold the particular wheel in question and many others to the Moline Iron Works; that he visited the Moline Iron Works at least every two weeks and many times more frequently during the years 1950, 1951 and 1952, and was acquainted with the physical setup as to the grinding stand for the grinding wheels and saw them in operation many times. He said that this particular wheel had been manufactured for the Moline Iron Works for their exclusive use and was not a stock wheel of the company. Over the objection of the defendant, he was permitted to answer that he did not observe anything unusual in the operation of the

10

grinding wheels of the Moline Iron Works. He stated that in case of any new operation or new machines, or some changes in requirements, he would make recommendations for specifications of particular wheels to be made to be used at the Moline Iron Works, and such recommendations would be sent back to the defendant company. It is insisted by the appellant that the court erred in admitting this evidence, because the man was only a salesman and had no authority to bind the defendant. We think the evidence shows that the man's position was more than a mere salesman, and under the circumstances it is our conclusion the court did not err in admitting this evidence.

The appellant complains that the court erred in refusing to give two of its tendered instructions nos. 40 and 42. Number 40 relates to the care that the Moline Iron Works should use in the operation of the particular wheel in question. We find no error in the court's refusing to give this instruction. The wheel in question was manufactured by the appellant for a particular order, and furthermore, the substance of the instruction was covered by other instructions tendered by the appellant. Instruction no. 42 is a peremptory one and the court gave seven such instructions on behalf of the defendant. Courts have frequently held that the giving of too many peremptory instructions should not be allowed, and the court may have refused this instruction for that reason, but on an examination of all of the instructions, it is our conclusion that the refusal to give this instruction was not error, and that considering the instructions as a whole, the jury was properly instructed in regard to the law in the case. We find no reversible error in the case, and the judgment should be and is affirmed.

Affirmed.